Before we begin our proceedings this morning, I'd like to turn to Judge Hughes for his motion. I have an admission this morning. One of my law clerks, Emily Sautter, who's been with me for a year now and has done an outstanding job. And although I'm sorry to lose her, I'm sure she's happy to start her or restart her career, I guess. She came from a law firm and took some time out to clerk for me. She's done an outstanding job. So I'm happy to move her admission. I move the admission of Emily K. Sautter, who is a member of the Bar and is in good standing with the highest court of California. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. I'm happy to grant the motion. I understand you have a very exciting week going on here and we congratulate you on your service and on your personal advancements. Thank you. With your right hand, you solemnly swear that you will conform to yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America. Congratulations. You're welcome. Okay. First case this morning is 1-4-1476, Judy Searle v. Lupin. Good morning. Good morning. Thank you, Chief Judge Crouse, Cannon, Shanmugam of Williams & Connolly for the FISA repellents. May it please the Court, when FISA first applied for the patent that was later reissued, it made an honest mistake. It believed that regardless of whether it filed its application as a continuation in part or a divisional, it would be entitled to invoke the safe harbor against invalidation for double patenting. Now, to be sure, that belief was incorrect. But where, as here, an applicant makes a choice in prosecution based on a mistaken belief about the law? What are the parameters of a mistaken belief? For example, is it new or should have known? Do we have to look at the reasonableness of that mistake? Or what if somebody just really made an absolute error? They didn't catch the 2008 FISA case when they were doing their research and did the same thing tomorrow as you did earlier on? Chief Judge Crouse, we believe that, at a minimum, where the applicant both possesses an honest but mistaken belief about the law and that belief was reasonable at the time, that that error, based on a mistake in law, is correctable in reissue. So, in our view, at a minimum, where you satisfy both a subjective component and an objective component, you are entitled to reissue, consistent with the language of the reissue statute, and that statute's broad remedial purpose. Now here, taking a look at the record as it exists on summary judgment, all that there is in the record concerning our subjective belief is the statement of the patent prosecutor, and it can be found at page 7122 of the appendix, that he believed, at the time of the 113 application and the earlier PCT application, that the Section 121 safe harbor, in fact, would apply. And we certainly believe that that is sufficient to satisfy the subjective component of the analysis, at least for purposes of a motion for summary judgment. But this isn't a case where he filed the same application and called it a CIP versus a divisional. There was, and some of the cases referred to this term of art, which is, a choice was made, a choice which was beneficial to your client. It wasn't, you did the same thing, you just labeled it a different way, and that was your mistake of law, right? Does that make a difference? There's no doubt, Chief Judge Prost, that what we did here was deliberate, because I could hardly argue that it was Scrivener's error to file a CIP application and to include new matters. So to the extent that Pfizer decided to file a CIP rather than solely a divisional application, that was clearly deliberate. Now, this Court has made clear that the mere fact that… And wasn't the CIP filed before the examiner even made the objection? The timeline here is tricky, but my understanding is the first CIP was filed even before the examiner required that. So that is certainly true with regard to the 629 application, and the history of this is admittedly quite complex. But everything descends from that. Well, we certainly claim priority through the 629 application, Judge Hughes. So let me start with that. I mean, do you agree, then, that the 629 wasn't filed in response to the examiner requiring these things? We do, but that is true only with regard to the 629 application. So just to be clear sort of what this application is, Judge Hughes, because, again, I admit this is all somewhat confusing. The 629 application was an application that was filed before the relevant restriction requirement, and it was itself a CIP that claimed only a single additional compound, actually, a veterinary drug by the name of Duracoxib. The restriction requirement then issued, and it was after the restriction requirement that Pfizer filed the PCT application and then the National Stage 113 application that Pfizer is now seeking to correct and reissue. So just to be clear, we did claim priority through the 629 application back to the parent 594 application, but that was simply because we wanted to claim that additional compound as well as, admittedly, a bunch of other new matter, all of which is to say that there's no dispute, to get back to Chief Judge Prost's question, that we wanted to file a CIP. But with regard to this question of whether there was a strategic choice, there's no evidence that we considered the relevant alternative for present purposes, which was filing both a CIP claiming the new matter and a divisional claiming the old matter. And if we had done that, there's no question that we would have been entitled to the safe harbor for the old matter if, in fact, the divisional had issued. In other words, if we had been sensitive to the safe harbor issue at the time of the earlier application, that would have been a way for us to have our cake and to eat it too, to claim the new matter and get protection for the new matter in a separate CIP, but also get the benefit of the safe harbor, precisely because the prosecutor believed that the safe harbor would be applicable regardless of the label attached to the application. And I would respectfully submit that although we were ultimately proved to be wrong by this court's 2008 decision, there was an ample basis at the time to believe that the safe harbor would be available. There's no evidence that FISA even considered that alternative. And so for purposes of what we believe is the appropriate standard here, we believe, number one, that the only evidence in the record indicates that we had an honest belief that we would be entitled to the safe harbor, and number two, that that belief was reasonable at the time we made the decision. Can I ask you, besides Dinsmore and the language in Dinsmore, not necessarily the holding, what's your best case for saying that a mistake of law is an error under the reissue statute? So, obviously, we start from the proposition that the language of the reissue statute itself is broad and does not carve out mistakes of law or single them out for differential treatment, and I think that certainly is consistent with the way that this court characterized the standard in Dinsmore and Fleming. Now, we cite a variety of cases, most of them pre-Federal Circuit cases, in which mistakes of law have been corrected, the Moist Cold Refrigerator case and the Roman Haas case. Yeah, those weren't really persuasive to me. Those were really quite radical, like passage of the Patent Act. I mean, those don't seem to really spot on the kind of scenario we're in. Well, and that's how appellees try to distinguish those cases. They say, look, these are cases that involve more dramatic changes in the law. And, certainly, I don't dispute that if you take, for instance, the Roman Haas case where, you know, you had the passage of the 1952 Patent Act, that that was a sort of black and white. So, are there cases that are closer to the scenario here in terms of the alleged mistake of law? Well, I think what I would say about the cases that are out there involving mistakes of law is that those cases in no way frame the standard in terms of the degree to which an intervening decision constitutes the departure, a change in the law, as opposed to a clarification. Those cases, and I think we have cited between us the principal cases that are out there, frame the standard in terms of a sort of failure to foresee the subsequent decision, really without regard to whether it is a watershed change in the law or a mere clarification. Now, here I think we would argue that this Court's decision in 2008, if not a sort of dramatic change in the law, was, you know, arguably a little bit in tension with these prior cases that we relied on that seemed to assume the availability of the safe harbor even for other types of continuation application. And this Court, in its 2008 decision, recognized as much when it talked about those cases and noted that those cases had seemingly assumed that, but that those cases had not. Well, except when you read the opinion in its entirety, it seems it's pretty strong that you're wrong, and then they respond as they should have because you raised those other cases, so they tried to deal with them. But I think when you read the opinion in its entirety, it doesn't appear that it was a close call, right? Well, you know, I would, of course not surprisingly, I would respectfully disagree, but at the same time I'm not here to relitigate an oral argument that took place at least seven years ago. I would say that I think part of the reason why it was a reasonable assumption was that although the statute speaks in terms of divisional applications, there was no affirmative evidence that Congress was using that term in the term of art sense that the Patent Office does. Obviously the different types of continuation applications are defined not by statute but defined in the NPEP, and there was, I think, a very good policy argument as to why Congress would not have wanted to draw that distinction. But all of which is to say that I'm not attempting to convince this Court that its earlier decision was incorrect. I'm simply making the point that it would have been reasonable at the time to believe that the safe harbor would have been available. Now to be sure – The use of the safe harbor, 121, depends on codependency, correct? Well, there certainly is a separate specific codependency requirement in Section 121, and Judge Allen did not address the applicability of the safe harbor in her opinion. She simply concluded that the patent had not validly reissued, and she did indicate that the patent, if it had validly issued, would be invalid for obviousness type double patenting. But she did not address the argument that appellees are now making about the as a result of requirement and the timing of the divisional application. So we certainly think – with specificity, if you could focus on why it is that the – or is it the case, as I think you will tell us that it's not, but it's the case that I guess the 319 reissue application, which has consonants, clearly as a result of type consonants, lacks copendency with the 165 patent, and the 113 application, which has copendency, lacks consonants. That seems to me on that part of the case, admittedly not a part that the district court addressed, but nonetheless on that part of the case argued here to be the problem that you face. Sure, and I will address the substance of both of those points, but let me just say that we really do think that there's no reason for this court to deviate from the ordinary practice of leaving it. I understand that. And that's particularly true because – Moving past that. Yeah, and that's particularly true, Judge Bryson, because there are other issues that would need to be resolved on remand anyway in this case, which is to say that the relief that we're seeking here is simply to vacate the order granting summary judgment to appellees and to remand for further proceedings, and there are 112 issues and other issues that are still – Right, but I think this issue itself looks to me like, correct me if I'm wrong, a pure question of law. It is a pure question. No dispute of fact. It is a pure question of law that this court has the power to resolve. Let me address the merits of those arguments directly, and I think there are really two arguments that appellees are making, as I indicated to Chief Judge Crouse. The first is the argument concerning the as a result of requirement, and with regard to that requirement, our submission is quite straightforward. With regard to the application for the patent at issue here, the divisional application, we believe that any as a result of requirement is satisfied where the claims at issue are claims that could have been pursued in the parent application, but for the restriction requirement. And we believe that that interpretation of – Now, to make sure I'm on the same page with you, which application are you specifically referring to now? You're not referring – are you referring to 319? I'm referring to the 319. You are referring – So I'm referring to the – which is, to be clear, the application for the patent that is here, the reissued patent, the 048 patent. But that's the application that has the compendency problem. Well, and I'm happy to address sort of the argument with regard to the timing of that application, but for purposes of the as a result of requirement, I just want to be clear that in our view, it is the mere fact that we claim priority through another application that was not filed as a result of the restriction requirement, the 629 application, does not somehow entail the conclusion that we don't satisfy the as a result of requirement. To the extent that this Court has addressed that requirement with regard to the downstream application, here the application for reissued patents, the Court has made clear most recently in the Boehringer case that what is required is simply that the claims be claims that would have been pursued in the parent, but for the restriction requirement. And I would respectfully submit that that is entirely consistent with the policy behind the safe harbor because, after all, the whole point of the safe harbor is to avoid penalizing someone for pursuing claims that could have been pursued in the parent, but for the restriction requirement. Okay. What about the compendency requirement? If the divisional application is filed before the issuance of the patent? Sure. So just to be clear as to how we think that requirement works, we think that the relevant application here, the divisional application, is obviously the application for the reissued patent, which is to say the 319 application. Now, to be sure, that application was filed in 2008. So as a strictly chronological matter, it was clearly filed well after the 165 patent, the patent that is being used as the reference here, issued. But all that we are arguing, Judge Bryson, is that we should be entitled to the same legal fiction that applies to reissued patents generally as a result of Section 252, which is to say that when you get a reissued patent, it is as if that patent issued from the original application for the patent that was deemed to be invalid. And so just to give you a sense of how I think that would work in the ordinary context, stripping away all of the procedural complexity of this particular case, suppose that a patentee filed a timely divisional application in the wake of a restriction requirement, and that patent which issued was co-pendent and satisfied the ordinary Section 120 co-pendency requirement and then was invalid for some technical reason. I don't think that there is any doubt that if the patentee sought to correct an error that was unquestionably correctable in a reissued proceeding, that they would continue to have the benefit of the earlier filing date of the original application under Section 120. And again, that's simply because of the operation of Section 252 and this legal fiction. And it's not a – it's a fiction created by statute that you treat the reissued patent as if it had been issued from the original application. And I would note – But if it isn't ERETA, doesn't that fly in the face of ERETA? I mean, ERETA has some very strange, straightforward language. The fact pattern there was simpler, but it does talk about not being able to cure everything and the relationship between the 120, 121, and the 250. But ERETA, I would respectfully submit, Chief Judge Crouse, deals with a somewhat different question, which is the propriety of reissue under Section 251. And ERETA simply stands for the proposition that when you have not pursued the claims at issue in a co-pendent fashion, you can't, after the fact, circumvent the co-pendency requirement by coming back and seeking to overcome the prior restriction requirement by, say, reissuing the original patent. We're not trying to do that here. And to get back to Judge Hughes' question, precisely because there is no dispute that we pursued the relevant claims in a co-pendent fashion, the relevant method of treatment claims here were pursued co-pendently in the PCT application and then in the 113 application as well, before the 165 patent that's being used as the reference ultimately issued. And so here, there's no question that we pursued these claims. The problem, as the 2008 decision made clear, is that we pursued them in the wrong type of application. And that's why we think that the ERETA cases are distinguishable for purposes of determining the propriety of reissue. My point for present purposes is simply that for purposes of the separate co-pendency requirement in Section 121, all you have to do is apply the ordinary rule that you treat the reissued patent as if it issued on the original application. I would like to reserve the balance of my time. Thank you. Thank you. All right, we've got a split argument here, and we're going to clock you each separately, but just hopefully be mindful of the fact that we don't want to run over. That's correct, Your Honor. So may it please the Court, I'm Steve Lawton here on behalf of Apotec Corp. and Apotec Inc. As you recognize, we do want to split the issues up three ways, and we want to do that in line with how the issues were presented to the Court below. I'm going to take five minutes and cover why 251, you cannot use reissue to cure the defect or failure to file a divisional application. My counsel, Ms. Jacob here, my co-counsel, Ms. Jacob for Lupin, will cover 251, cannot be used to cure intentional acts made during prosecution, and that every other error must be independently correctable under 251. And the balance of the time will be argued by Mr. Carson here, arguing that even if the reissue were proper, the patent is still invalid because it was not filed, as we were just discussing, as you were just discussing earlier, not in response, the application was not filed in response to a restriction requirement and therefore is not available for safe public protection under 121. So turning that issue, I mentioned that this case is actually on black letter law, as you recognize, that you cannot use the reissue statute to cure the failure to file a divisional application. And that comes right out of the three cases that are in the briefs here, the Weiler, the Watson, and the Areta cases that we were talking about, and it's not all forced with the same fact pattern here. But suppose here, instead of filing a continuation that included new matter, they had for some reason filed a continuation instead of a divisional, even though it didn't include new matter. Why wouldn't that be correctable under 251? Because of the strict requirement under 121. And so what they should have done is they recognized this filed a divisional application, and what 121 says... Sure, but let's assume this, I'm trying not to muddle the issues, but let's assume that it was unclear whether 121 covered divisionals and continuations or just divisionals. And so going forward after that decision, I think nobody has an argument. But for that decision, if they filed a continuation that they meant to file as a divisional and contained no new matter, why wouldn't that be correctable? Well, because here they made a deliberate choice and received a benefit from that deliberate choice, Your Honor. Okay, but that's not the question I'm asking you, because I understand they made a deliberate choice here because they wanted to add new matter. But suppose they hadn't, and they had merely... instead of intending to mark it as a divisional. And because of that, they didn't get the safe harbor provision. Why couldn't they go back and get a reissue saying this was really meant to be a divisional? That was an error of law in the way we looked at it, and you should reissue it. Well, I think that... Well, those are different facts that are before the Court right now. And here they had... I understand, but what's your answer to that hypothetical? Would that be correctable under 251? Well, it may perhaps be correctable under those particular circumstances here. And this dovetails with the issue of whether they had a misunderstanding of the law at the time, and that's wrong for three reasons. One, 251 is clear on its face that it requires a divisional application. Two, it runs contrary to law at the time with the Watson... excuse me, the Weiler, the Watkinson, or Rita cases, and it's also belied by their own actions in prosecution. They knew very well the difference between a CIP and a divisional application and intentionally chose to file this as a CIP to get the benefits of filing it as a CIP. Well, the benefits, yeah, but that's not just used hypothetical. What benefits, if they had filed just the matter that's otherwise covered under the restriction requirement, and that was all that was included in the filing, what benefit would they have been deriving by filing this CIP as opposed to a divisional? Well, the benefits they got here from filing it as a CIP versus divisional was that it led to three additional patents that they've gotten to cover subject matter that was derived from that new matter added to the prosecution. Yeah, but the hypothetical, my, okay. That was the new matter that they got. So, you know, our position is that they did not have a reason to believe at the time, and Judge Post, you asked the question, what's the standard? What should we apply here? Well, number one, they definitely should have known based on that standard and following from the Henry Mead case, they should have known at that risk of filing it as a CIP as opposed to a divisional. What about if in our opinion in Pfizer in 2008 we had started off by saying, you know, guys, this is a really close case, and the law has been unclear up until this point, but here it is and we're going to decide it this way. Would that change your view? That may change the view, but I don't think it undoes the three decisions earlier. It was very clear that you cannot use reissue to cure the failure to file a divisional application. That was clear long before 2008. You have the decisions from those cases from the 60s, the 70s, and the 80s, so a long tenure of jurisprudence, but that's been the rule for a long time, and that's why. Were those cases where somebody failed to file a divisional and filed a continuation instead or just where they failed to file a divisional at all and realized after the fact that they didn't need to? Well, I think I'm not aware of a case like that, Your Honor, where I am aware of where you use reissue to perfect priority claims. You can do that when it's clear from the overall record, and I see that my time is expiring. May I finish my answer? Yes. So those cases are instances where you're trying to perfect a priority claim in the overall context of what was intended there, and what we have here is a very different scenario because we know what they intended. They perfectly intended to file that CIP application to get that benefit of the new matter and are now trying to undo that error and now regret that choice because they did not have the safe harbor available. Okay. Thank you. Thank you. Ms. Jacobs. May it please the Court? My name is Beth Jacobs of Kelly Dry and Warren, representing the Lupins Pharmaceutical Defendant. I will jump right to one of the questions, which is, is there a case out there which is close on the facts, closer than Dinsmore? And there is. It's an old one. It's Whittlesley, which is, I think, from 1936, but has been cited by this Court much more recently. In Whittlesley, the applicant misunderstood the law, thought he was only allowed to claim one species in the genus instead of more than one species, had a patent claiming only one species. After the patent issued, recognized that this was a mistake, that the law had changed, and he was now entitled to claim up to three species, went for reissue to try to change that, and predecessor to this Court ruled, no, you intended not to claim what you didn't claim, and the fact it was a mistake of law doesn't save you. So that was the closest one we could find on the facts, where it was a mistake of law, but they were held to the mistake of law because the act that they intended to do, where the mistake was not within what they tried to include in the patent. I think that we would phrase the question a little bit differently. It's not a question of whether there was an error or an unintended consequence. The question is, did they intend to do what they did? They intended to get a CIP. They got a CIP. They did not intend an invalid patent. Nobody intends an invalid patent, or almost nobody intends an invalid patent. So if this Court rules that the fact that you make an error of judgment, that you misread the law, whatever it is, you do what you intend to do, you do the strategy you intend to do, but nevertheless the consequences are an invalid patent, then reissue is no longer a relatively narrow equitable standard, but virtually every time a patent is invalidated on a question of law, it is merely a step toward reissue. And we think in terms of parameters that – I'm sorry. Go ahead. You can finish. That that just is too broad. The parameters here to answer the first question I think is, one, black letter, failure to file a timely divisional cannot be cured regardless of the cause, and second, an intentional strategy in an act, you have to live with those consequences. Well, the problem that I have with the intentional act argument, and it depends, I guess, on exactly how we define that term, but the Dinsmore case seems to address specifically the problem that, of course, there are many acts that aren't simply slips of the pen, but are intentional in the sense that they were deliberate, but they may have been done without cognizance of the consequences, et cetera, and that they therefore may fairly be called mistakes. How do you define intentional in a way that avoids what Dinsmore was clearly saying is a permissible form of deliberate action for purposes of reissue eligibility? Well, Dinsmore, if I'm recalling the case, was the terminal disclaimer case. And in that case, they were held to the consequences of their terminal disclaimer. Well, that was the whole thing of Dinsmore. But what I'm focusing on, the language at – The language, mistakes of factor of one. The language says that Section 251 often applies to applicants' choices, i.e., their deliberate decisions about what to say in their patents, not just slips of the pen, and goes on to have a little more discussion about it. That's the problem that I think I'm having at least with the intentional conduct line of argument that you're pressing. When I was trying to figure out what the parameters of that statement and similar statements were, I was looking at – And you concluded what? Well, I had a conclusion, but I decided to support it a little more. When you look at the facts of the cases, for example, you could go into Fleming, and when Fleming is talking not in general but what happened there, they say this is just a classic mixed misunderstanding of law and fact on underclaiming or overclaiming. So I think that if you look at the facts, the facts of the cases say it's not enough to not understand the ultimate consequences. There has to be a mistake in the intentional act. So you have the cases where, for example – What do you mean by a mistake in the intentional act? That's the key that's troubling me. For example, we have the cases where the wrong person signed the declaration. We have the cases where they didn't file a certified copy of the foreign application on time. Why isn't that a mistake of law? Well, because they – You thought that you didn't have to have that, and it turns out you do. Well, in those cases, I think it was they just didn't get it done. It was a mistake. All right, but suppose that they knew you had to do it, or they didn't know. Excuse me. They didn't know you had to do it. That makes it ineligible, but if they didn't do it, actually it's eligible? Because what they intended to do was to file an application that, in that case, had priority before an application. So they intended to accomplish the filing of that application, but they just did it. They made a mistake in terms of the process. So if, for example – I have two seconds. But if, for example, if I can just finish, if they had intended to file a divisional and check the CIP box, I think that's a much closer question. I would still say we have a bright line, failure to file a divisional. But that's – I mean, that's more of like a typographical error. You're not suggesting that 251 is limited to those kind of factual or typographical or clerical errors, are you? I mean, it's very clear that it doesn't say that. It goes further. And even if it's an intentional act, if the intentional act claims more or less than you are entitled to, you can correct it through the reissue statute. Isn't that right? And I guess I would respond by looking at the facts of Serenkin, the facts of Dinsmore, where the applicant intended to do the act that they did. They did that act properly. And it's not – Well, I understand that. I don't want to take you too much over your time. But could you address my hypothetical about even if they had intended to file a CIP application but claimed no new matter and thought and had a reasonable belief that that was covered by the State Harbor, why wouldn't that be correctable under the reissue statute? Well, my first answer to that would be that I think there is a bright line that failure to file a timely divisional cannot be cured regardless. But if that is not persuasive, then I think it's a very close question. I think it might possibly be changed, but I would still say they intended to file a CIP and therefore the consequences – and they filed a CIP even if there was no reason for it, but there was nothing wrong with that CIP. The CIP itself isn't rejected because it failed to add new matter. It still would be accepted as a CIP. So the action that they took is the action that they intended to take, and the fact that there were unforeseen consequences to their patents is not what reissue is supposed to cure. Thank you. Mr. Carsten. Good morning, and may it please the Court. Judge Hughes, I'd like to address your hypothetical, and that is Amgen resolved exactly that question. So in Amgen, the applicant there had filed a continuation, not a divisional, and they regretted it. But this court in Amgen said, no, it's a safe harbor, and a safe harbor is not open water. And so using a reissue to try to do that negates the limitations of Section 121. It broadens and violates the very restrictions that were clearly set forth in that statute. And I submit that if there are any reservations about the question of error or what a party intended or didn't intend, I submit with respect that there are simpler and more easily grounded bases upon which this court can – Well, I have three bases, Your Honor. First is the new matter basis, which the district court did actually find below. So if the patent office, assuming the case we don't agree, but if the patent office validly reissued the patent, that patent as it stands today still contains new matter. It's still ACIP despite the fact it has the word divisional on the cover page, and that's because of the bracket errors that were made. The district court went the other way. He cured the bracket errors. Yes, Your Honor. The district court – I would disagree marginally, Chief Judge. The district court found in footnote two that there was one erroneous bracket. Pfizer has pressed that there are three. And regardless of what the district court did, and she did not specify how she was going to correct this patent aside from, there is no new matter remaining, we don't know what she did in order to correct those issues. I'm starting to think that your side doesn't have much confidence in the co-pendency question because we've been waiting for you to address it, and you're doing everything but addressing it. Let me go straight to it then, Your Honor. If you look at the cover page of the reissue of a patent, you see it says divisional, but let's look at each one of those divisionals. There is the PCT application. Notably, Judge Hughes, as you probably noted earlier, the 629, which broke the ability to claim the safe harbor in this line is no longer apparent, but that is clearly a CIP. The PCT application is a CIP. It was a CIP. It remains tomorrow a CIP. The 113 national stage application, it is filed as a CIP. It contains new matter. It remains a CIP today. We know that because Pfizer, in their reply brief at page 8, said all these applications remain unchanged. That's their own word. I know, but your friend, and this may have come up in the reply brief, but fairly so because you raised this in red, referred to 252, and I'm not sure you've ever explained why the language in 252, which says the reissue of patents will have the same effect on operation in law, et cetera, does not allow them to then go back and sort of retroactively apply the 113 application. Well, two points on that, Your Honor. First, the 113 application never was, never will be, and still is not a divisional. Despite what the fiction may be, there was never a divisional application filed in this chain. Pfizer did file divisional applications. The 165, for example, that patent, the one that renders this patent invalid was filed off of a divisional. Secondly, 252 is not a statute that says for all purposes everywhere in the world it's the same patent. It's carefully circumscribed, and there are exceptions, including intervening rights. So to seize upon three or four words from 252 and say, oh, this makes what I've done here, this unprecedented creation of a fictional file history, which never existed and never has existed, and won't exist anywhere else but in the four corners of this courtroom as applied to this patent, that's not what 252 stands for. So if I may, Your Honor. Do you have any case law that is helpful on the specific point that the Chief Judge raised, which is whether the language from 252 that your opposing counsel cited, they shall have the same effect in operational lies if issued from original patent, would not apply in a case such as this one with respect to the 319 reissue application? The 319, I guess we can all agree that has consonants for purposes of if it had been issued directly as a divisional, it would be fine. I would concur that there is. So that part of it is fine. The only problem I take it with, disagree with me if I'm wrong here, but the only problem I take it with the 319 is a problem of copennants. The 319 is exactly separate from that copennant problem. Right now. Over a decade too late. Why is that? Exactly what authority can you point us to that tells us that that copennancy problem is fatal, notwithstanding the language that your opposing counsel is pointing us to from 252? So the closest I found, I had the same question, Judge Bryson. The closest I found was the case Intel. It's not exactly analogous. There's a bunch of Intel cases. Do you have a site for that? I'm trying to get a hold of that site. If I can't get it in a timely manner, Your Honor, may I have permission to just supplement something quick with a letter? You can leave a memo or some indication with the clerk before you leave. That will make it easier. Thank you, Your Honor. I appreciate that. And in Intel, there was a broad statement or a suggestion that that language applied for all purposes. And this court went through carefully and looked at the other provisions in 252 and found that the presence of intervening rights and the question of claim scope really did bite significantly into that broad proposition. I do not believe that 252 saves FISA here. Now, the new matter issue, I believe, is a simple basis. The district court exceeded its authority within the four corners of that patent document. One cannot tell that there are three or five or eight brackets amiss. The district court's authority to correct errors is narrowly tailored and circumscribed. That's clear from this court's precedence. And the district court here exceeded it. So even leaving aside the question of the propriety of the reissue, there's a narrow basis upon which this court could affirm the district court's decision and one that the district court expressly addressed below. No need for remand. No disputed facts. With respect to the failure to file a divisional application at all. And there is no divisional application that's been filed in this chain at all. You have the 629, as Judge Hughes, you pointed out earlier, which broke the ability to claim the 121 Safe Harbor. And under Amgen, the failure to file that divisional is game over with respect to the entitlement to the narrow Section 121. Finally, there's the restriction requirement issue. And the restriction requirement was addressed by the district court in footnote 5. She found that the presence of the 629 application as a CIP demonstrated filed three months before any restriction requirements here. Demonstrated there was no entitlement to Section 121. For all of those reasons, I submit that there are narrow independent bases, all of which are amply supported by the record, requiring no further facts finding by this court or by the court below upon which this court can affirm. It really is not asking too much of the patentee here to look at their patent, read their patent, see if it needs correction before they go ahead and assert it. Especially in this case, where the patent had already been found invalid by this court. I submitted second verse, same as the first. All of the efforts before the patent office did nothing to address the fundamental problems with entitlement to Section 121. Unless the court has further questions? Did you find the Intel case? I believe the citation I have here is 703F31360. It's a 2012 Federal Circuit case. The title is Intel Corporation versus Negotiated Data Solutions. I apologize, we didn't have this in our papers. It was raised for the first time when I replied. Yeah, you didn't have it, so it's understandable. Thank you. Thank you. Thank you, Your Honors. I'd like to say just a very brief thing on the question of whether there was a correctable error, and then turn to the co-penalty requirement. On the issue of whether we can correct our honest but mistaken belief about the law, my friends cite two cases, and I just want to respond to those cases. Ms. Jacobs cited the Whittle fee case from this court's predecessor. And on that case, I think all that I would say is that the change in law in that case occurred during the prosecution of the original patent. And so the change in law occurred before that patent actually issued. And so we believe that that case is plainly distinguishable. Certainly the appropriate vantage point at which to judge the reasonableness of the error is the point of the prior application, the point at which that application issues. And I would respectfully submit that for the reasons that we discussed in the earlier colloquy, we don't believe that it is appropriate to set a higher bar and require there to be a change in the law or to have to look at the intervening decision and see how clear the panel thought that the outcome was. We believe that a reasonableness standard combined with a requirement that the applicant in fact possess the requisite belief is sufficient to preserve the narrowness of the degree to which errors can be corrected for mistakes of law. I would note, by the way, in response to Mr. Carson, that the Amgen case was the case that extended the rule of this court's 2008 decision to continuation applications as well. It said that continuation applications were not entitled to the safe harbor. But it said nothing about the question of whether that error could be corrected in reissue. And for the reasons that I think were well illustrated by Judge Hughes' hypothetical, it seems antithetical to the purpose of the reissue statute to say that even where the sole error was the attachment of the wrong label, the use of the word continuation rather than divisional, that that error would not be correctable. Let me turn directly to the issue of co-pendency. And again, as a preliminary matter, we believe that athletes have offered no reason to deviate from this court's ordinary practice of leaving even truly legal issues for resolution in the first instance by the district court. But to use Chief Judge Pro's phrase, I by no means want to transmit a lack of confidence in that argument. Our argument is based on the language of Section 252 itself. And I'm not aware of this Intel case. We'll, of course, happily take a look at it after the oral argument. But as I indicated in my earlier argument, our submission on this co-pendency issue is quite straightforward, which is to say that in the ordinary instance where, for instance, you have a divisional application that issues, that is filed co-pendently and that results in an issued patent, and there are some technical defects, say the applicant names the wrong inventors or fails to include a requisite oath or declaration, I don't think anyone believes that in that instance the applicant would lose the benefit of the earlier filing date by proceeding and reissuing. I think it would be a quite dramatic change in practice for this court to say that where you have an error that is indisputably correctable, but where the reference patent issues in the intervening period, you're not entitled to the safe harbor. And again, the language of Section 252, in our view, could not be clearer. And I would point this court as well to the analog in the context of PCT and national stage applications. A national stage application is treated as if it were filed as of the date of the earlier PCT application. Of course, that's also an issue in this case. And that is by virtue of Section 363 of the Patent Code, which is worded in much the same way as Section 252, in which this court has construed to permit an applicant to have the benefit of the earlier filing date. And so, too, in the reissue context, we respectfully submit that as appropriate. I see that my time has expired. Thank you. We thank all counsel and the cases submitted.